UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THE UNITED STATES OF AMERICA

**Hon. Hugh B. Scott**

03CR33A

v.

**Report
&
Recommendation**

Carlos Garcia-Benitez et al.,

Defendants.

The following defendants have filed omnibus motions which are pending before the

Court: Jose "Tiso" Santiago (Docket No. 244); Aneudi Gomez (Docket No. 249); Lizbelia Cruz

(Docket No. 286); Pedro DeJesus (Docket No. 287); Joel Navarro (Docket No. 294); Daniel

Rivera (Docket No. 295); and Jose Torres-Burgos (Docket No. 302).  Defendant Aneudi Bomez

also filed a motions joining the motions of DeJesus, Navarro and Rivera (Docket Nos. 290 and

297).  Defendants Luis Pena (Docket No. 298) and Jose Santiago (Docket No. 299) also join the

motions filed by Navarro and Rivera.[1]

Defendants' Santiago, Navarro and Rivera have moved to suppress the evidence obtained

---

[1]  The defendants' various discovery motions are the subject of a separate Decision and
Order.

1

pursuant to various eavesdrop warrants.  The remaining defendants have joined in the motion.[2]


## Background

On February 11, 2003, a federal grand jury returned a three-count indictment charging the

defendants Carlos Garcia-Benitez, Jose Borea, Joel Navarro, Jose Castro, Jose Francisco

Santiago, Ismael Colon, Oscar Romero, Edwin Cruz, Manuel Garcia, Arlene Burgos, Aramis

Ramirez, Jose Luis Santiago, Jose Rodriguez, Aneudi Gomez, Jose R.. Masso-DeJesus, Pedro

DeJesus, Omar Lao, Daniel Rivera and Lizbelia Cruz in a series of conspiracies to sell illegal

drugs in violation of 21 U.S.C. §§841 and 846.  A superceding indictment was returned on April

29, 2003, adding Jose A. Torres-Burgos, Lazaro Burgos, Angel M. Cruz, Ismael Colon and

Daniel Rivera. This indictment charged Ezequiel Rodriguez in place of Jose Rodriguez.  On May

6, 2004, the grand jury returned a six count indictment adding Juan Elvin Casillas, Ricardo

Rodriguez, Randolph Chi, Luis Pena and Miguel A. Pena, Jr. as defendants.

Between November 13, 2002 and February 13, 2003, law enforcement agents obtained

six eavesdrop warrants:

| | | |
|---|---|---|
| 1. | 11/13/02 | 716-310-9273 |
| 2. | 12/03/02 | 716-308-3838 |
| 3. | 01/06/03 | 716-308-3838 |
| 4. | 01/18/03 | 413-222-4333 |
| 5. | 01/30/03 | 321-624-8844 |
| 6. | 02/05/03 | 716-308-3838 |

---

[2]   In their respective motions papers, defendants Santiago and Rivera also reserve the right to
move to suppress evidence obtained as a result of searches of their respective dwellings.  Counsel
has not advised the Court whether the respective defendants still intend to bring such motions. If
defendants do intend to challenge the respective searches, such motions shall be filed within 30
days of the date of this order.

The defendants assert multiple theories to suppress any evidence obtained pursuant to these warrants.

**Sealing**

According to 18 U.S.C. 2518(8), "[i]mmediately upon the expiration [of the eavesdrop warrant] such recordings shall be made available to the judge issuing such order and sealed under his directions." The defendants assert in conclusory fashion that the tapes "were not sealed in a timely fashion." (Docket No. 294 at page 53). The defendants provide no specific allegations supporting their contention. The government has provided the Court with a chart that indicates that each of the warrants at issue was sealed within one or two days of expiration. (Docket No. 301 at page 5). The defendants have not challenged the information provided by the government. The Second Circuit has held that sealing " 'within one or two days' " will normally be deemed immediate within the meaning of § 2518(8)(a), United States v. Maldonado-Rivera, 922 F.2d 934, 949 (2d Cir.1990), and that longer delays require suppression "unless the government furnishes an explanation for the delay that is 'satisfactory' within the meaning of the statute." Id., note 5. Where the delay is between two and five days, we have indicated that the government should submit with the tapes an *in camera* explanation for the delay, see United States v. Massino, 784 F.2d 153, 158 (2d Cir.1986), although an explanation submitted at the time of a defendant's motion to suppress will be considered. United States  v. Wong, 40 F.3d 1347, 1375 (2d. Cir. 1994).

The motion to suppress based upon a delay in sealing the tapes should be denied.

**Probable Cause**

Defendants challenge whether probable cause existed with respect to the issuance of the eavesdrop warrants.  (Docket No. 244 at page 13; Docket No. 294 at page 55).  In this regard, the defendants argue, generally, that the warrants were based upon statements summarizing conversations recorded pursuant to eavesdrop warrants issued by Districts other than the Western District of New York.  During these recorded conversations, the parties involved rarely expressly referred to drugs and drug activity by name, but instead used language the agents interpreted as being euphemisms for drug related activity.  The defendants contend that the agents interpretations had no basis in fact. (Docket No. 294 at page 56).  To the extent the warrant applications referred to information obtained from confidential sources, the defendants contend that the information was never established to be reliable. (Docket No. 294 at page 59).

The test for determining probable cause under the federal wiretap statute is the same as the test for determining probable cause for a search warrant. United States v. Diaz, 176 F.3d 52,110 (2d Cir. 1999). Thus, the "totality of the circumstances" test articulated by the Supreme Court in Illinois v. Gates, 462 U.S. 213 (1983), applies. Under that test, the issuing court must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that ... evidence of a crime will be found...." Id. at 238; see Diaz, 176 F.3d at 110. Furthermore, the evidence must be viewed and weighed "as understood by those versed in the field of law enforcement." Gates, 462 U.S. at 232. Finally, "[a] reviewing court must accord substantial deference to the finding of an issuing judicial officer that probable cause exists." United States v. Wagner, 989 F.2d 69, 72 (2d

4

Cir.1993); <u>United States v. Gotti</u>, 42 F.Supp.2d 252, 261 (S.D.N.Y.1999). "Any doubts as to the

existence of probable cause should be resolved in favor of upholding the authorization." <u>United

States v. Ambrosio</u>, 898 F.Supp. 177, 181 (S.D.N.Y.1995) (citing <u>Gates</u>, 462 U.S. at 237 n. 10).

In the instant case, a review of the warrant applications reveals that sufficient probable

cause existed as to each warrant.

<u>The November 13, 2002 Warrant at to 716-310-9273</u>

The Affidavit of Joseph S. Bongiovanni submitted in support of the November 13, 2002

warrant ["the Bongiovanni Affidavit"] includes actual transcriptions of portions of conversations

recorded pursuant to previous eavesdrop orders, along with the agent's interpretation of those

conversations.  In addition, the affidavit refers to the fact that on September 24, 2002 one of the

intercepted individuals whose conversations formed the basis for the warrant request, was

stopped in his vehicle, a subsequent search of which yielded approximately 5 kilograms of

cocaine and approximately ½ kilogram of heroin in hidden compartments. (See Bongiovanni

Affidavit at ¶ 27).   In addition, the Bongiovanni Affidavit includes reference to the purchase of

one gram of heroin by a confidential informant outside the residence of another individual whose

intercepted conversations were being used in support of the issuance of the warrants in the instant

case.  (Bongiovanni Affidavit at ¶ 39). This information, and evidence obtained pursuant to pen

registers, strengthens the agent's analysis of the intercepted conversations.  Based upon a review

of the totality of the circumstances, probable cause existed to support the issuance of the

November 13, 2002 warrant.

The December 3, 2002 Warrant as to 716-308-3838

This warrant was issued upon an application which included the Affidavit of Michael R.. Wright ["the Wright Affidavit"], a Task Force Agent with the Drug Enforcement Administration ["DEA"].  In addition to providing transcriptions of conversations intercepted pursuant to the November 13, 2002 warrant as well as other warrants, the Wright Affidavit included reference to information received from a confidential source regarding a drug transaction allegedly involving Jose Borea and an individual identified as "Wilfred."  Wright Affidavit at ¶ 16-18.  Wilfred was later identified as Jose Santiago. Wright Affidavit at ¶ 20.  The Wright Affidavit also contains information reflecting a controlled purchase by a confidential source from Borea on November 13, 2002. Wright Affidavit at ¶ 21-25.  This information, as well as information obtained from pen registers, strengthens the agent's interpretations of the recorded conversations.

Based upon a review of the totality of the circumstances, probable cause existed to support the issuance of the December 3, 2002 warrant.

The January 6, 2003 Warrant as to 716-308-3838

This was a continuation of the December 3, 2002 warrant on 716-308-3838.  The supporting affidavit submitted by Michael Wright ["1/6/03 Wright Affidavit"] included reference to several conversations intercepted pursuant to the prior eavesdrop warrants, including a conversation in which Borea tells an unidentified female "to take the stuff" out of a yellow shirt as well as "the stuff" in "the door frame by the television," and put it in a bag and throw it outside because "they just raided Joe."  1/6/03 Wright Affidavit at page 26.   Such thinly veiled conversations work to increase confidence in the agent's interpretation that other recorded

conversations, although perhaps more obtuse, refer to drug related activities.  Defendant Navarro

also argues that there was no basis to list him as an interceptee on the January 6, 2002 warrant.

However, the 1/6/03 Wright Affidavit reflects that someone named "Joel" had various

conversations with Borea regarding drug related activities.  These calls were made to the target

phone number from 716-853-1353.  The government represents that the telephone number

belongs to a phone located at 26 10th Street, which is alleged to be a residence used by Joel

Navarro.

Once again, based upon a review of the totality of the circumstances, probable cause

existed to support the issuance of the January 6,  2003 warrant.


The January 18, 2003 Warrant as to 413-222-4333; 216-339-0879

The defendants do not present any specific argument attacking the January 18, 2003

warrant.  In any event, the 1/18/03 Affidavit from Joseph S. Bongiovanni ["1/18/03 Bongiovanni

Affidavit"], submitted in support of the warrant application, provides the Court with information

obtained from numerous conversations recorded pursuant to the prior eavesdrop warrants. In

addition, the 1/18/03 Bongiovanni Affidavit provides information from a confidential source,

who along with an undercover officer, had previously made drug purchases arranged by one of

the individuals to be intercepted.

Based upon a review of the totality of the circumstances, probable cause existed to

support the issuance of the January 18, 2003 warrant.

<u>The January 30 2003 Warrant as to 321-624-8844 and 321-624-8845</u>

The defendants do not present any specific argument attacking the January 30, 2003 warrant. As with the January 18, 2003 warrant, this application is supported by an affidavit from Joseph S. Bongiovanni ["the 1/30/03 Bongiovanni Affidavit"], which recites numerous conversations recorded pursuant to the prior eavesdrop warrants.  Several of these conversations were calls placed from the phones targeted in this warrant application.  Based upon a review of the totality of the circumstances, probable cause existed to support the issuance of the January 30, 2003 warrant.

<u>The February 5, 2003 Warrant as to 716-308-3838</u>

This represents another request for the continuation of the December 3, 2002 and January 6, 2003 eavesdrop orders as to 716-308-3838.  In addition, defendant Rivera is listed as an interceptee.  The supporting affidavit by Michael R.. Wright ["2/5/03 Wright Affidavit"] recites numerous conversations recorded pursuant to prior wire taps. Included in the previously recorded conversations is one from 7-1-602-3060, a phone subscribed to by Rivera, in which Rivera and Borea allegedly have a discussion in which Borea complains that he has obtained poor quality drugs and therefore could not sell any to Rivera at that time.

Once again, based upon a review of the totality of the circumstances, probable cause existed to support the issuance of the February 5,  2003 warrant.

**Necessity**

The defendants also assert that the government failed to establish the necessity of the wiretap warrants.   In this regard, the defendants rely primarily on United States v Lilla,  699 F.2d  99  (2d  Cir. 1983).  It should be noted that Lilla  has  been distinguished at least three times by the Second Circuit itself and by at least two District Courts in this Circuit. United States v. Torres,  901 F.2d 205  (2d Cir.), cert. denied sub nom. Cruz v. United States, 498 U.S. 906 (1990); United States v. Puglisi, 790 F.2d 240 (2d Cir. 1986); United States v. Ruggeno, 726 F.2d 913 (2d Cir.), cert. denied sub nom. Rabito v. United States, 469 U.S. 831 (1984); United States v. Blount, 30 F. Supp.2d 308 (D. Conn. 1998); and United States v  Crozzoli, 698 F. Supp. 430 (E.D.N.Y. 1988).

An application for electronic surveillance must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear unlikely to succeed if tried or to be too dangerous."  18 U.S.C. § 2518(3)(c). Although these requirements control the use of such intrusive measures, they "were not intended to turn electronic surveillance into a tool of last resort." United States v. Valdez, 1991 WL 41590, *2 (S.D.N.Y. 1991), aff'd, 952 F.2d 394 (2d Cir. 1991).   Further, these requirements are to be construed in a "common sense and realistic fashion." Ruggiero, 726 F.2d at 924.  As the Second Circuit has repeatedly made clear:

> The purpose of the[se] statutory requirements is not to preclude the use of electronic surveillance until after all other possible means of investigation have been exhausted by investigative agents;  rather, they only require that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods.

Torres, 901 F.2d at 231.

9

In assessing whether the government has satisfied this burden, the Second Circuit has warned that the averments alleged in connection with the use of normal investigative techniques are not to be reviewed *de novo*. <u>Torres</u>, 901 F.2d at 231. The role of the reviewing Court instead is simply to "decide if the facts set forth in the application were minimally adequate to support the determination that was made." <u>Torres</u>, 901 F.2d at 231; see <u>Ruggiero</u>, 726 F.2d at 924 (use of certain normal investigative techniques-- such as search warrants, grand juries or interviews--unnecessary where such techniques would publicize the investigation" and "perhaps jeopardize the investigation itself"); <u>United States v. Villegas</u>, 1993 WL 535013 (S.D.N.Y. 1993); <u>United States v. Miranda,</u> 1993 WL 410507 at *2-3 (S.D.N.Y. 1993) (court's initial "determination that normal investigative techniques would not suffice is entitled to substantial deference.").

Finally, the Court has deemed wiretapping "particularly appropriate" where, as here, "the telephone is routinely relied on to conduct the criminal enterprise under investigation," <u>United States v. Young</u>, 822 F.2d 1234, 1237 (2d Cir. 1987). Indeed, in the context of narcotics conspiracies, the Court "has held that the government meets its burden by submitting a wiretap application supported by an affidavit describing how traditional investigative techniques had failed to provide more than 'a limited picture' of [the] narcotics organization." <u>Valdez,</u> at *2 (quoting <u>Torres</u>, 901 F.2d at 232).

In the instant case, the defendants suggest that the government had already obtained significant information against an individual Joel Gonzalez as a result of the eavesdrop orders issued in the Southern District of New York. (Docket No. 294 at page 62). However, it does not appear from the record that the investigation against Gonzalez in the Southern District had

provided any real understanding of the full reach of the criminal enterprise within the Western District of New York.  The record reflects that some information was obtained from confidential informants and other investigative techniques. Notwithstanding such additional potential sources of information, the record reflects that the government would have obtained only a  "limited" understanding of the alleged drug conspiracy in the Western District of New York using solely traditional investigative techniques.  Thus, the government met its burden to establish the necessity of the wiretaps.

**Attainment of Investigative Objectives**

Pursuant to 18 U.S.C. §2518(5), no eavesdrop order is to be issued "for any period longer than is necessary to achieve the objective of the authorization."  The defendants contend that the objectives of the investigation were attained "at the very least at the conclusion of the November 13, 2002 eavesdrop order." (Docket No. 294 at page 65).  There is no basis in the record for such a conclusion.  The various affidavits submitted in support of the respective eavesdrop orders state that the objective of the investigation was to ascertain the identities of all participants in the suspected drug conspiracy and to gather evidence to convict them.    The record does not reflect that any order was issued in this case after the objective of the investigation had been achieved.

**Conclusion**

Based on the above, it is recommended that the respective omnibus motions  (Docket Nos.244, 249, 286, 287, 290, 294, 295, 297, 298, 299, and 302, ) should be denied to the extent they seek suppression of the evidence obtained pursuant to the various eavesdrop orders.

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as WDNY Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME,  OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**  Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and WDNY Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to WDNY Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal

authority." **Failure to comply with the provisions of Rule 72.3(a)(3)may result in the District Court's refusal to consider the objection.**

So ordered.


s/ Hon. Hugh B. Scott
United States Magistrate Judge

July 21, 2005
Buffalo, New York